UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE

ROXANNE L. KNIGHT                    )
                                     )
V.                                   )          NO. 2:14-CV-78
                                     )
CAROLYN W. COLVIN,                   )
Acting Commissioner of Social Security )

REPORT AND RECOMMENDATION

This matter is before the United States Magistrate Judge, under the standing orders

of the Court and 28 U.S.C. § 636 for a report and recommendation. The plaintiff's

application for disability insurance benefits under the Social Security Act was

administratively denied following a hearing before an Administrative Law Judge ["ALJ"].

The plaintiff filed a Motion for Judgment on the Pleadings [Doc. 10], while the defendant

Commissioner has filed a Motion for Summary Judgment [Doc. 14].

The sole function of this Court in making this review is to determine whether the

findings of the Commissioner are supported by substantial evidence in the record.

*McCormick v. Secretary of Health and Human Services,* 861 F.2d 998, 1001 (6th Cir. 1988).

"Substantial evidence" is defined as evidence that a reasonable mind might accept as

adequate to support the challenged conclusion. *Richardson v. Perales*, 402 U.S. 389 (1971).

It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the

conclusion sought to be drawn is one of fact for the jury. *Consolo v. Federal Maritime

Commission*, 383 U.S. 607 (1966). The Court may not try the case *de novo* nor resolve

conflicts in the evidence, nor decide questions of credibility. *Garner v. Heckler*, 745 F.2d

383, 387 (6th Cir. 1984). Even if the reviewing court were to resolve the factual issues

differently, the Commissioner's decision must stand if supported by substantial evidence. *Liestenbee v. Secretary of Health and Human Services,* 846 F.2d 345, 349 (6th Cir. 1988). Yet, even if supported by substantial evidence, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2007).

Plaintiff was 47 years of age, a "younger" individual, at the time of the alleged onset of disability, March 7, 2010. No one disputes that the plaintiff cannot return to her past relevant work. She has a high school education. To obtain benefits, she must establish that she was disabled prior to the expiration of her insured status on December 31, 2014.

The medical record is accurately summarized in the defendant's brief as follows:

> In August 2009, Plaintiff saw an advanced practice nurse at the Tennessee Department of Health and requested to transition off of an insulin pump and back to insulin injections (Tr. 200-01). A physical examination was normal except for some irregularities with her thyroid (Tr. 200). In a blood test, Plaintiff's hemoglobin A1c level (HbA1c) was 6.8 (Tr. 178). The report indicates that the American Diabetes Association recommends a level of less than 7.0 for adults with diabetes (Tr. 178). Plaintiff's glucose serum level was "low" at 54 (Tr. 179).
>
> The next month, Plaintiff saw Joanne Langton, M.D., for a follow-up appointment (Tr. 167-68). Plaintiff reported never having blurred vision or loss of vision (Tr. 169). She also reported no history of numbness or tingling (Tr. 169). Dr. Langton prescribed insulin injections (Tr. 168).
>
> In November 2009, Plaintiff reported an infection in her mouth and draining in her left eye (Tr. 197). An advanced practice nurse noted that Plaintiff's diabetes was "running better now" than when she used an insulin pump (Tr. 197). Aside from the mouth and eye infections, a physical examination was normal (Tr. 197). The advanced practice nurse described Plaintiff's diabetes as "stable" (Tr. 198).
>
> Plaintiff still reported an eye infection in February 2010 (Tr. 195). A physical examination of her arms and legs was normal (Tr. 195). Plaintiff's HbA1C was 6.7 and her glucose serum level was "high" at 195 (Tr. 176-77).
>
> In April 2010, except for Plaintiff's eye infection, a physical examination was normal (Tr. 192). An advanced practice nurse described Plaintiff's diabetes as "stable" (Tr. 193).

2

Three months later, in July 2010, Plaintiff reported that her blood sugar fluctuated (Tr. 189). A physical examination was normal (Tr. 189). Her HbA1c was 7.2 and her glucose serum level was "high" at 205 (Tr. 174-75).

In October 2010, Plaintiff complained of pain in her feet and legs (Tr. 186). She said she had twisted her right ankle eight months earlier, which was painful with walking and range of motion (Tr. 186). Her HbA1c was 7.1 (Tr. 173).

Plaintiff saw Marianne Filka, M.D., in January 2011 for an evaluation of her gait and right hand grip strength (Tr. 204-06). Plaintiff reported that carpal tunnel syndrome caused her to drop things with her right hand (Tr. 204). She said she did not have any pain and did not wear a splint (Tr. 204). On examination, Plaintiff walked with a normal gait without using any assistive device (Tr. 205). She had full range of motion in both wrists and in all the fingers of both hands (Tr. 205). On grip strength testing, she showed 55 pounds of grip strength on the left and 10 pounds on the right (Tr. 205).

In February 2011, Plaintiff complained at the Tennessee Department of Health of low blood sugar in the morning (Tr. 213-14). Other than dry skin and a nail fungus on her right big toe, a physical examination was normal (Tr. 213).

Three months later, in May 2011, Plaintiff reported that her blood sugar continued to fluctuate (Tr. 246). A physical examination was normal (Tr. 246). Her HbA1c was 7.2 and her glucose serum level was 75, within normal limits (Tr. 225-26).

Plaintiff continued to report fluctuating blood sugar levels in September 2011 (Tr. 243). She also reported nausea and said she was under increased stress (Tr. 243). A physical examination was normal (Tr. 243).

[Doc. 15, pgs. 2-4].

At the administrative hearing, the ALJ listened to testimony from the plaintiff, her husband, and Donna Bardsley, a Vocational Expert ["VE"]. The ALJ asked Ms. Bardsley to assume a person of plaintiff's age, education and work experience who "is restricted to light exertion. Assume that she can't have any concentrated exposure to hazards. And assume that she can't perform more than occasional fine manipulation, that is fingering with the right upper extremity." When asked if there were jobs such a person could perform, Ms. Bardsley identified the jobs of sales clerk, with 875 in the region and 2.5 million nationally; information clerk, with 350 in the region and 300,000 nationwide; hostesses or greeters, with 375 in the region and 350,000 nationwide; and hand packagers, with 600 jobs in the region

3

and 750,000 available nationally. At the sedentary level, she identified 800 local jobs and 750,000 in the national economy. (Tr. 33-34).

In his hearing decision, the ALJ found that the plaintiff had severe impairments of diabetes and right carpal tunnel syndrome post surgery. The plaintiff alleged other severe impairments, such as esophageal reflux disease and hypothyrodism, but the ALJ did not find that either of these caused more than minimal vocational restrictions (Tr. 11-12).

The ALJ then turned his attention to the "step three" determination of whether the plaintiff had an impairment which met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. Specifically he considered the plaintiff's diabetes under Listing 9.00 and her carpal tunnel syndrome under Listing 11.00, but found plaintiff did "not have the requisite deficits..." for those Listings. As for "medically equivalence" to a Listed impairment, he found that "no treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment, nor does the evidence show medical findings which are the same or equivalent to those of any listed impairment in the Listing of Impairments." (Tr. 12).

As required at step three, where no finding is made that a claimant meets or equals a Listed Impairment, the ALJ determined the plaintiff's residual functional capacity ["RFC"]. He found that she could "perform light work...with no concentrated exposure to hazards and she can perform no more than occasional fine manipulation (fingering) with the right upper extremity." (Tr. 12). In this regard, he then carefully discussed the medical records upon which he based this finding.

Regarding her diabetes, he noted that it "can be a very serious disease process..." but

4

opined that "the medical evidence does not reflect any residual deficits that are generally associated..." with diabetes of such extent as render plaintiff disabled. He noted she had never been hospitalized for diabetic-related issues and that her records did "not contain references to kidney disease or other organ damage. He noted that she only took over the counter medications for her neuropathy pain. While the plaintiff complained that when her blood sugars were high, her vision was blurry, the ALJ noted that the medical records did not show treatment records or document situations in which any vision difficulties would preclude gainful activity. Finally, he stated that Dr. Filka's consultative exam showed that plaintiff's gait was normal and that she moved about without any assistive device. (Tr. 13).

With regards to her carpal tunnel syndrome, he again referred to Dr. Filka's exam which showed a full range of motion in all digits and both wrists, albeit with reduced grip strength in her right hand. He stated that while he utilized Dr. Filka's findings in making his RFC finding, he did not "assign weight" because Dr. Filka had not been retained to offer an opinion as to RFC, although he obviously accepted her *findings* regarding plaintiff's function and mobility (Tr. 13).

He then evaluated the plaintiff's credibility. He found that her severe impairments could produce some limitations, but not to the extent she alleged. To support this finding, he noted the lack of aggressive treatment for pain, lack of any doctor's opinion that she was totally disabled by pain, and the lack of significant adverse side effects from her medications. He noted her daily activities, such as preparing meals for her family, performing usual household chores, shopping, caring for a pet, managing their money, and attending to all of her personal care. He did note that he gave her credence to the extent of his RFC finding,

rejecting the opinions of the State Agency physicians who found that she had no severe impairments. He also noted that he considered the hearing testimony of her husband, but found that the medical evidence set out above did not support the degree of limitation that he described (Tr. 14).

The ALJ concluded by finding that the VE identified a significant number of jobs in the region and nation which a person with the plaintiff's limitations could perform. Accordingly, he found that she was not disabled (Tr. 15-16).

Plaintiff does not take issue with the ALJ's findings regarding the limitations imposed by her carpal tunnel syndrome.[1] *See,* Doc. 10, pg. 7. However, with respect to her diabetes, the plaintiff asserts that no substantial evidence exists for the ALJ's decision, and that this Court should reverse the Commissioner's decision, or remand "for the ALJ to more fully develop the record below." Doc. 10, pgs. 13-14.

Plaintiff's argument mainly addresses the ALJ's finding that the plaintiff did not meet or equal the Listing of Impairments in § 9.00. Alternatively, if the Court agrees with that finding of the ALJ, the ALJ is required "to proceed to the fourth and, if necessary, the fifth (final) step of the sequential evaluation process." Doc. 10, pg. 14.

Regarding Listing 9.00, as plaintiff seems to note, it has undergone a change in recent years. Prior to 2011, Listing 9.08 dealt specifically with diabetes mellitus. That prior Listing was met if a person had diabetes mellitus with (A) "neuropathy demonstrated by significant and persistent disorganization of motor function in two extremities resulting in sustained

---

[1]As plaintiff concedes, any argument not made in support of the present motion before the Magistrate Judge is waived in any further appeal of this report and recommendation.

disturbance of gross and dexterous movements, or gait and station..." [2]

Since 2011, Listing 9.00 "farms out" endocrine disorders to "the listing for other body systems" *See* Listing 9.00 B. "Diabetic peripheral and sensory neuopathies" are to be evaluated under Listing 11.00. *See*, Listing 9.00 B(5)(a)(ii). Listing 11.04(B), read in conjunction with 11.14, retains the same language as former Listing 9.08(A) set out above, except that diabetes mellitus, the triggering mechanism, is not in and of itself a part of the listing. In other words, the new revised listing recognizes that now "most endocrine disorders do not reach listing-level severity." 76 Fed. Reg. At 19692. Diagnosis of, and treatment for, an endocrine disorder including insulin dependent diabetes does not carry the same impact as it did under old Listing 9.08, even though the language of that listing "lives on."

However, plaintiff states that "endocrine disorders do not necessarily require proof of objective signs, duration of symptoms, treatment for same, length of treatment, etc." Doc. 10, pg. 14. If plaintiff is implying that she has no burden to show "disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movements, or gait and station," she is wrong. That was, and is, the physical manifestation which would have met the old listing and is required to meet the new listing. The ALJ pointed specifically to the reasons for finding she did not have this problem in two extremities, as required by the relevant language, including especially the findings of Dr. Filka. At most, she had a lack of strength in her right arm. Dr. Filka found a normal gait and full range of motion in both wrists and the fingers of both hands (Tr. 205). This in and of

[2]§§ (B) and C) of the "old" listing are not argued to be relevant to plaintiff's situation.

itself is substantial evidence that she did not meet the applicable listing. There is even less objective evidence of blurry vision or loss of concentration. Finally in this regard, there is a lack of proof showing that the plaintiff "medically equaled" another listing, or what that listing might be.

The plaintiff states correctly that if the ALJ did not find that she met or equaled one of the Listing of Impairments, he was obligated to proceed to steps four and five of the evaluation process. This is exactly what the ALJ did. Plaintiff also argues that "the burden was on the Administration to show that she had the residual functional capacity to perform work which exists in substantial numbers in the national economy." Doc. 10, pg. 21. Once again, this is correct. Once again, the ALJ acknowledged this responsibility and spelled out the reasons for his findings and the proof upon which he relied.

Finally plaintiff argues that "the substantial evidence-to the exclusion of any evidence supposedly found in favor of the Administration by the ALJ and the Appeals Council-showed that plaintiff does not have the residual functional capacity to perform any job in the national economy." Doc. 10 pg. 23-24. Whatever this argument may mean, there *was* "evidence in favor" of the ALJ's findings. The fact that the plaintiff and plaintiff's husband presented contrary evidence, which the ALJ as the finder of fact did not give full credence to, is irrelevant. Since there was substantial evidence to support the ALJ, even though there is other evidence to the contrary, the Court is obligated to affirm the ALJ's decision.

The Court finds that the ALJ followed the regulations, and that there was substantial evidence to support his RFC finding and his question to the VE. Plaintiff did not establish that she met or equaled a listing and the medical evidence indicated that she did not.

Accordingly, it is respectfully recommended that the plaintiff's Motion for Judgment on the Pleadings [Doc. 13] be DENIED, and the defendant Commissioner's Motion for Summary Judgment [Doc. 14] be GRANTED.[3]

Respectfully submitted,


 s/ Dennis H. Inman
United States Magistrate Judge

---

[3]Any objections to this report and recommendation must be filed within fourteen (l4) days of its service or further appeal will be waived.  28 U.S.C. 636(b)(1).